# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| LAVATEC INC. ) | |
| ) | |
| Debtor. ) | Case No. 09-32004 |
| ) | |
| ) | **Re: Doc ID # 51** |
| ) | |

## FOURTH INTERIM ORDER (I) AUTHORIZING DEBTORS-IN-POSSESSION TO OBTAIN POST-PETITION FINANCING; (II) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY STATUS; AND (III) MODIFYING THE AUTOMATIC STAY

Upon the motion (the "DIP Financing Motion") of the above-captioned debtor and debtor-in-possession (the "Debtor") for entry of a fourth interim order (the "Interim Financing Order" or "Order") and a final order (the "Final Financing Order," or "Order" and together with the Interim Financing Order, the "Financing Orders"): (a) authorizing the Debtor to obtain post-petition financing and other financial accommodations from Samir Tadros, Inc. (the "Lender"); (b) granting security interests and liens and according superpriority claim status in favor of the Lender, pursuant to § 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"); (c) scheduling and approving the form and method of notice for a final hearing pursuant to Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"); and (d) granting related relief, including, without limitation, modification of the automatic stay pursuant to § 362 of the Bankruptcy Code; and

This Court having reviewed the DIP Financing Motion and all matters brought to the Court's attention at the third preliminary hearing, which was held on December 2, 2009,

ursuant to Bankruptcy Rule 4001 (the "Interim Hearing"), and the Debtor having stipulated in the DIP Financing Motion to the findings and conclusions set forth in the Interim Financing Order and parties in interest having been given due notice of the DIP Financing Motion, as reflected on the Certificate of Service filed for the DIP Financing Motion, and having been provided with a copy of the Interim Financing Order as reflected in the Certificate of Service filed by Debtor and no other parties having objected or appeared in opposition thereto, and after due deliberation and consideration, this Court makes the following findings of fact and conclusions of law (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*):

**BASED UPON THE STIPULATED AND UNCONTESTED RECORD, THE COURT HEREBY FINDS AND DETERMINES:**

A. On July 24, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

B. The Debtor has retained possession of its property and continues to operate and manage its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Chapter 11 case. On August 18, 2009, a Creditors' Committee was appointed pursuant to Bankruptcy Code § 1102.

C. The Court has jurisdiction over the Chapter 11 Cases, the parties and Debtor's property pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D. An ongoing need exists for the Debtor to receive financing of the type sought in the DIP Financing Motion and to be permitted access to funds, to continue operation of its business as debtor-in-possession, to minimize the disruption of the Debtor as "going concerns," and to preserve the value of the Debtor's business operations. The Debtor is not able to obtain financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to section 364(c)(1) of the Bankruptcy Code. Within the timeframe required by its need to avoid immediate and irreparable harm, the Debtor can obtain financing

only by the grant of liens junior to any existing liens on property of its estate pursuant to the Bankruptcy Code, as set forth herein.

E. The Debtor has requested that the Lender establish a secured credit facility (the "DIP Facility") in favor of the Debtor (the "Borrower"), pursuant to which Borrower may obtain advances under a term loan facility (the "DIP Loans"). The Lender is willing to establish the DIP Facility, upon the terms and conditions set forth herein and in that certain Post-Petition Term Loan and Security Agreement (together with all schedules, exhibits and annexes thereto, and as at any time amended or restated, the "DIP Loan Agreement" and, together with other agreements, instruments and other documents executed or delivered in connection with the DIP Loan Agreement, the "DIP Loan Documents"). The proceeds of such DIP Facility shall be used by Borrower in accordance with this Order and the DIP Loan Documents, and for the purposes and amounts set forth in any budget that is approved in connection with an order permitting Debtor to use Cash Collateral.

F. A condition precedent to the willingness of the Lender to establish the DIP Facility is that, as security for the prompt payment of all DIP Loans, all interest, fees, costs, expenses (including attorneys' fees) and other charges at any time payable under the DIP Loan Documents, the Debtor grants to the Lender security interests in and liens upon the Debtor's assets (real and personal property), including, without limitation, Debtor's cash, accounts, accounts receivable, inventory, equipment, fixtures, general intangibles, documents, instruments, chattel paper, deposit accounts, letter-of-credit rights, commercial tort claims, investment property, and books and records relating to any assets and all proceeds (including insurance proceeds) of the foregoing, whether in existence on the Petition Date or thereafter created, acquired or arising and wherever located, excluding, however, any bankruptcy avoidance causes of action, all as more fully described in the DIP Loan Agreement (all such real and personal

property, and the proceeds thereof, being collectively hereinafter referred to as, the "DIP Loan Collateral") subject only to valid perfecting liens existing as of the Petition Date.

G. The DIP Loan Documents have been negotiated in good faith and at arm's length. Any Credit Extensions (as hereinafter defined), DIP Loans and/or other financial accommodations made to Debtors by the Lender pursuant to this Financing Order and the DIP Loan Documents shall be deemed to have been extended in good faith.

H. Notice of the Interim Hearing on this DIP Financing Motion was proper and sufficient under the circumstances and no other notice need be given.

**NOW THEREFORE, IT IS HEREBY AGREED AND ORDERED THAT:**

1. **Disposition.** The DIP Financing Motion is hereby granted to the extent and subject to the terms set forth herein with the foregoing findings incorporated herein by reference, and the Debtor and the Lender consent and stipulate thereto.

2. **Authority to Execute and Deliver Necessary Documents.** Upon execution and delivery thereof, the DIP Loan Documents constitute valid and binding obligations of the Debtor, enforceable against the same in accordance with their terms. In furtherance of the provisions of this paragraph 2, the Debtor is authorized and directed to do and perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution of security agreements, pledge agreements, mortgages, deeds of trust, deeds to secure debt, financing statements, and intellectual property filings), and to pay all filing and recording fees, in each case as may be necessary or, in the opinion of the Lender, desirable to give effect to any of the terms and conditions of the DIP Loan Documents, to validate the perfection of the DIP Liens (as hereinafter defined) or as otherwise required or contemplated by the DIP Loan Documents.

3. **Authorization of Borrowing.** Upon entry of this Order, the Debtor is immediately authorized to (a) to obtain the DIP Loans and other extensions of credit

(collectively, the "Credit Extensions") pursuant to the DIP Loan Documents and to incur any and all liabilities and obligations thereunder and to pay all interest, fees, costs, expenses (including attorneys' fees and costs subject to allowance by the court) and other obligations provided for under the DIP Loan Documents; and (b) satisfy all conditions precedent and perform all obligations hereunder and thereunder in accordance with the terms hereof and thereof. The Lender shall have no obligation or responsibility to monitor Borrower's use of the Credit Extensions and may rely upon Borrower's representation that the amount of Credit Extensions requested at any time, and the use thereof and the satisfaction of any conditions precedent applicable thereto, are in accordance with the requirements of this Order, the DIP Loan Documents, and Bankruptcy Rule 4001(c)(2). Any and all Credit Extensions may be made by Lender in its sole and absolute discretion and Lender shall have no obligation to make any such Credit Extensions. Lender agrees, however, that no extension of credit will be made unless it is required under the budget, attached as an exhibit to a concurrently entered cash collateral order. Notwithstanding the foregoing, Lender is authorized to make an advance as a DIP Loan in the amount of $27,500.00 for allowed professional fees and disbursements incurred by professionals retained by the Debtor and any statutory committee(s) of unsecured creditors appointed in the bankruptcy case, which shall be held in Dean Baker's IOLTA account ("Escrowed Professional Fees"). The Escrowed Professional Fees shall be subject to further court order under 11 U.S.C. § 330 and § 331, but will not be subject to any claim by any creditor (including without limitation any DIP Lien, as later defined, or Superpriority Claim, as later defined) and shall be exclusively for the professionals who are the intended beneficiaries of the advance. All Credit Extensions and other Post-Petition Debt (as hereinafter defined) shall be due and payable, and shall be paid, by the Debtor in accordance with the requirements of this Interim Financing Order and the DIP Loan Documents. All fees, expenses, and/or costs reimbursed or reimbursable under the DIP Loan Documents or the Financing Orders by Debtor to the Lender are hereby ratified

and approved. The Debtor is hereby authorized and directed to pay the foregoing, in accordance with the terms of the DIP Loan Documents and this Order, and, with the exception of professional fees and expenses, without the necessity of Debtor or the Lender filing any further application with the Court for approval or payment thereof. Upon payment, such fees shall be deemed fully earned, indefeasibly paid, and non-refundable.

4. **Reimbursement of Future Expenses.** All costs and expenses incurred by the Lender in connection with post-closing matters with respect to the DIP Loan Documents, any amendments or modifications to the DIP Loan Documents, the monitoring of this Chapter 11 Case, the preservation, perfection, protection, and enforcement of the Lender's rights hereunder or under the DIP Loan Documents, or in the collection of the Post-Petition Debt (as hereinafter defined), including, without limitation, all filing and recording fees or taxes and fees and expenses of attorneys, accountants, appraisers, and other professionals incurred by the Lender in connection with any of the foregoing, shall form a part of the Post-Petition Debt and shall be paid by the Debtor (except with respect to fees and expenses of professionals), without the necessity of filing any application with or obtaining further order from the Court in accordance with the terms of the DIP Loan Documents. Upon payment, such amounts shall be deemed fully earned, indefeasibly paid, and non-refundable.

5. **DIP Liens.** All Credit Extensions, together with all interest, fees, costs, expenses (including attorneys' fees), and other charges, at any time or times payable by the Debtor pursuant to the DIP Loan Documents (all such Credit Extensions, interest, fees, costs, expenses (including attorneys' fees), and other charges, including any "Obligations," as such term is defined in the DIP Loan Agreement, are collectively referred to herein as, the "Post-Petition Debt") shall be, and hereby are, secured by security interests and liens in favor of the Lender, as follows:

pursuant to section 364(c)(2) of the Bankruptcy Code, perfected security interests in and liens upon all DIP Loan Collateral, subordinate to valid, perfected, and non-avoidable existing liens ("Prepetition Liens") as of the "Petition Date and/or any replacement liens granted during this case for the Prepetition Liens and/or to valid and unavoidable liens in existence on the Petition Date that are perfected thereafter (with a priority that relates back to a date prior to the Petition Date) as permitted by section 546(b) of the Bankruptcy Code and perfected security interests in all DIP Loan Collateral.

All of the security interests and liens granted to the Lender are referred to in the DIP Loan Documents and herein as the "DIP Liens." In respect of the DIP Liens, Debtor shall concurrently herewith or hereafter, as requested by the Lender, execute and deliver to the Lender all such documents as it may request to effectuate, evidence, confirm, validate or perfect all liens on and security interests in the DIP Loan Collateral as provided for herein or granted pursuant to the DIP Loan Documents, including, without limitation, UCC-1 financing statements, mortgages, continuation statements, and amendments. The Lender shall not be required to file any UCC-1 financing statements or any other document, or take any other action (including possession of any of the DIP Loan Collateral) in order to validate or perfect the liens and security interests granted hereunder or under the DIP Loan Documents, as all such liens and security interests shall be deemed automatically perfected by and upon entry of this Order. If the Lender shall, in its discretion, choose to file such UCC-1 financing statements (or amendments to or continuations of any existing financing statements) and otherwise confirm perfection of such liens and security interests, all such financing statements or similar instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Order. The Lender may, in its discretion, file a certified copy of this Order in any filing or recording office in any jurisdiction under the laws of which any of the Debtors were incorporated or formed or in which the Debtor has or maintains any DIP Loan Collateral.

6. **Superpriority Claim.**

(a) Upon entry of this Order, the Lender shall be deemed to have an allowed superpriority administrative expense claim (the "Superpriority Claim"), pursuant to section 364(c)(1) of the Bankruptcy Code, for all of the Post-Petition Debt, having supreme priority over all other administrative expenses (but subordinate to and no more extensive than super priority expense claims granted Wachovia Bank, N.A., The United States of America and the State of Connecticut (to the extent that they possessed perfected liens as of the Petition Date) in existing and future cash collateral orders) in this Chapter 11 Case of the kind specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, attachment, or otherwise.

(b) The DIP Liens, the Superpriority Claim, the Adequate Protection Liens (as hereinafter defined), and other rights and remedies granted to the Lender under this Interim Financing Order shall continue in these Chapter 11 Case and such liens and security interests shall maintain their respective priorities until (i) all of the Post-Petition Debt has been indefeasibly satisfied, in full, in cash and the DIP Loan Documents are terminated in accordance therewith.

(c) Except as otherwise set forth in this or any prior interim Financing Orders, the DIP Liens and the Superpriority Claim, and other rights and remedies granted to the Lender under this Order are subject only to (i) payment of non-Insider (as that term is defined in the Bankruptcy Code) wages and related payroll taxes, (ii) sales taxes, unemployment taxes and corporate taxes that accrue in the ordinary course of the Debtor's business after the Petition Date; but only those that accrue while Lender's principal, Samir Tadros, is in control of the Debtor (iii) allowed professional fees and disbursements incurred by professionals retained by the Debtor and any

statutory committee(s) of unsecured creditors appointed in the bankruptcy case in an aggregate amount not to exceed $100,000.00, provided the Debtor shall be permitted to pay fees and expenses allowed and payable under 11 U.S.C. § 330 and § 331, as the same may become due and payable, and the same shall not reduce the Carve-Out and (iv) the payment of amounts due pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court (the "Court Fees").

7. **Surcharge.**

(a) In consideration of the DIP Facility, no other costs or administrative expenses, pursuant to sections 506(c) and/or 105(a) of the Bankruptcy Code or otherwise, that have been or may be incurred in these Chapter 11 Cases, in any proceedings related hereto or in any superseding chapter 7 cases, and no priority claims are or will be prior to or on parity with the Superpriority Claim of the Lender (except for the claims of Wachovia Bank, N.A., The United States of America and the State of Connecticut as granted in existing and future cash collateral orders) for the Post-Petition Debt. Other than the Carve-outs specified in paragraph 6 of this Order, in no event shall any such costs or expenses of administration be imposed upon any of the DIP Loan Collateral without the prior written consent of the Lender, and no such consent shall be implied from any action, inaction or acquiescence. The Lender shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Loan Collateral.

(b) Other than the Carve-outs specified in paragraph 6 of this Order, in no event shall any costs or expenses of administration be imposed upon the Lender or any of its collateral pursuant to sections 506(c) and/or 105(a) of the Bankruptcy Code or otherwise without the prior written consent of the Lender, and no such consent shall be implied from any action, inaction or acquiescence by the Lender. The Lender shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to its collateral.

8. **Repayment.** The Post-Petition Debt shall be due and payable, and shall be paid, as and when provided in the DIP Loan Documents, without any right of rescission, setoff, recoupment, counterclaim, or defense for any reason, unless and to the extent expressly otherwise agreed to in writing by the Lender. In no event shall the Debtor or any other party-in-interest be authorized to offset or recoup any amounts owed, or alleged to be owed, against any of the DIP Loan Collateral or Post-Petition Debt unless and to the extent expressly otherwise agreed to in writing by the Lender.

9. **Permitted Uses of DIP Loan Collateral and Cash Collateral.**

So long as no Termination Event (as hereinafter defined) has occurred and is continuing, Debtor is authorized to use the proceeds (including, without limitation, cash, accounts, negotiable instruments and any other property comprising "cash collateral" within the meaning of 11 U.S.C. § 363(a)) of any portion of the DIP Loan Collateral (all such proceeds, whether arising or collected prior to or after the Petition Date (including all cash on hand), being collectively referred to herein as, "Cash Collateral") only for use in the Debtor's business operations and in accordance with any budget that is approved in connection with an order permitting Debtor to use Cash Collateral.

10. **Preservation of Rights Granted Under Financing Orders.**

(a) There shall not be entered in this Chapter 11 Case any order that authorizes the obtaining of credit or the incurrence of indebtedness by Debtor (or any trustee or examiner) that is (i) secured by a security, mortgage, collateral interest, or lien on all or any part of the DIP Loan Collateral that is equal or senior to the DIP Liens, or (ii) entitled to priority administrative status that is equal or senior to the Superpriority Claim granted herein; provided, however, that nothing herein shall prevent the entry of an order a) grants adequate protection to perfected secured claims that existed as of the Petition Date and b) grants to such perfected secured claims that existed as of the Petition Date senior liens and administrative status that is equal or senior to

the Superpriority Claim for continued use of cash collateral in which such secured claims were perfected as of the Petition Date. .

(b)     If this Chapter 11 Case is dismissed or converted, then neither the entry of this Order nor the dismissal or conversion of the Chapter 11 Case shall affect the rights of the Lender under the DIP Loan Documents, or this Order, and all of its rights and remedies thereunder shall remain in full force and effect as if this Chapter 11 Case had been dismissed or converted. Debtor shall not seek, and it shall constitute an "Event of Default" (under the DIP Loan Documents) if the Debtor seeks, or if there is entered, any order dismissing any of this Chapter 11 Case.

(c)     The provisions of this Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any plan of reorganization or converting any of the Chapter 11 Case from chapter 11 to chapter 7. In no event shall any plan of reorganization be allowed to alter the terms of repayment of any of the Post-Petition Debt from those set forth in the DIP Loan Documents, unless Lender consents.

(d)     The Post-Petition Debt shall not be discharged by the entry of any order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, Debtor has waived such discharge.

11.     **The Automatic Stay.** The automatic stay provisions of section 362 of the Bankruptcy Code, to the extent applicable, are hereby lifted, vacated, modified, and/or terminated as to the Lender to the extent necessary to implement and effectuate the provisions of this Order and the DIP Loan Documents, and thereby permits the Lender, among other things, to file or record any UCC-1 financing statements, mortgages or other instruments and documents evidencing the liens and security interests granted herein, and to take any and all actions authorized by the Court in this Order.

12. **Termination; Remedies.**

(a) Any of the following shall constitute a Termination Event with respect to the DIP Loan Documents:

(i) The conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code;

(ii) An order is entered by the Bankruptcy Court in the Chapter 11 Case appointing, or Debtor files an application for an order seeking the appointment of, in either case, without express prior written consent of Lender (i) a trustee under Section 1104 of the Bankruptcy Code, or (ii) an examiner with enlarged powers relating to the execution of the business (i.e., powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code;

| | |
|---|---|
| (iii) | The filing of any plan of reorganization or similar document that fails to provide for the payment in full of the DIP Loan or which is inconsistent with the terms of this Order, unless consented to by Lender; |
| (iv) | An order is entered by the Bankruptcy Court dismissing the Chapter 11 Case which does not contain a provision for termination of the DIP Loan Agreement, and payment in full of all Post-Petition Debt prior to entry thereof; |
| (v) | An order is entered by the Bankruptcy Court in the Chapter 11 Case without the prior written consent of Lender (i) to revoke, reverse, stay or materially modify, supplement or amend the Financing Orders, (ii) to permit any administrative expense or any claim (now existing or hereafter arising, of any kind or nature whatsoever, other than the Carve-outs specified in this Order) to have administrative priority as to Debtor equal or superior to the priority of Lender (except as granted to Wachovia Bank, N.A., The United States of America and the State of Connecticut in prior and future cash collateral orders) in respect to the Obligations, or (iii) to grant or permit the grant of a lien on the Lender's collateral (other than a Permitted Encumbrance, as defined in the DIP Loan Agreement); or |
| (vi) | The failure of any Debtor to comply with any material provision of this Order; or |
| (vii) | Any Event of Default under Section 10 of the DIP Loan Agreement has occurred beyond any applicable cure periods. |

(b) Upon or after a Termination Event, Debtor is strictly prohibited from using Cash Collateral, and the Lender (in accordance with the provisions of the DIP Loan Agreement) shall be fully authorized to, without providing any prior notice thereof to the Debtor or any other notice parties, accelerate the Post-Petition Debt under the DIP Loan Documents, charge interest at the default rate set forth in the DIP Loan Agreement, hold any balances in any accounts of the Debtor, and terminate further Credit Extensions under the DIP Facility as provided in the DIP Loan Agreement; and, upon five (5) business days written notice ("Notice Period") to counsel for Debtor, counsel for to the official committee of unsecured creditors, if any, and the U.S. Trustee, along with filing a copy of such notice on the docket, the Lender may enforce all liens relating to its collateral, and take all other actions and exercise all other remedies under the applicable loan documents and applicable law that may be necessary or deemed appropriate to proceed against or realize upon all or any portion of its collateral as if this Chapter 11 Case or any superseding chapter 7 cases was not pending.

(c) In the event that any party-in-interest has not obtained an order from this Court to the contrary before the end of such Notice Period, the automatic stay provisions of section 362 of the Bankruptcy Code, to the extent applicable, shall be deemed lifted, vacated, modified and/or terminated without the necessity of any further action by the Court.

(d) If any hearing is held before the end of the Notice Period regarding the exercise of any rights or remedies by the Lender, the only issue at such hearing that may be raised by any party in opposition to the exercise of any such rights or remedies (the "Moving Party") (and to the extent necessary, this Order shall constitute an order that prohibits any such Moving Party from asserting, claims, initiating or filing a pleading inconsistent with the terms of this section 14(d)) shall be whether, in fact, a Termination Event has occurred and is continuing, and (i) the Moving Party shall have the burden of proof with respect thereto and (ii) Debtor shall be deemed to have waived their rights (if any) to seek any relief (including, without limitation, any right to

use, or seek authority from the Court to use, any collateral or the proceeds thereof, injunctive relief under section 105 of the Bankruptcy Code or otherwise). Notwithstanding the anything in this order to the contrary, nothing herein shall prevent the Debtor from seeking the right to use Cash Collateral after a Termination Event, provided, however, that no order authorizing the use of Cash Collateral shall enter unless, as a condition to such order, the Debtor has paid the Post-Petition Debt in full in accordance with the provisions of the DIP Loan Documents.

(e)    The rights, remedies, powers and privileges conferred upon the Lender pursuant to this Order shall be in addition to and cumulative with those contained in the DIP Loan Documents.

13.    **Certain Reporting Requirements.** Debtor shall observe and comply with all of the financial reporting and performance covenants and conditions set forth in the DIP Loan Documents.

14.    **Access to Debtor.** Without limiting the rights of access and information afforded the Lender under the DIP Loan Agreement, the Debtor shall permit representatives, agents, and/or employees of the Lender, including professionals retained by legal professionals, to have reasonable access to their premises and records during normal business hours (without unreasonable interference) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

15.    **No Subrogation**. In no event shall any person or entity who pays (or, through the extension of credit to the Debtor, causes to be paid) any of the Credit Extensions or Post-Petition Debt be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted to or in favor of, or conferred upon, the Lender by the terms of the DIP Loan Documents or this Order, until such time as all of the Credit Extensions or Post-Petition Debt is indefeasibly paid and satisfied in full (in the manner specified in the DIP Loan Documents) and the DIP Loan Documents are terminated in accordance with their terms.

16. **Successors.** This Order shall be binding upon all parties-in-interest, including, without limitation, the Debtor and its respective successors and assigns (including, without limitation, any trustee, estate administrator, responsible person or representatives or other fiduciary or similar person hereafter appointed as a legal representative of the Debtor, or with respect to the property of the Debtors' estates), the Debtors' creditors, and any statutory committee appointed in this Chapter 11 Case. In no event shall the Lender have any obligation to make Credit Extensions to any chapter 7 or chapter 11 trustee appointed or elected for any estate of any Debtor.

17. **Subsequent Reversal or Modifications.** The DIP Loan Documents have been negotiated in good faith and at arm's-length between Debtor and the Lender. Any Credit Extensions, DIP Loans and/or other financial accommodations made to Debtor by the Lender pursuant to this Order and the DIP Loan Documents shall be deemed to have been extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code. All credit extended by the Lender pursuant to the DIP Loan Documents was extended by the Lender in good faith and in express reliance on the protections afforded to post-petition lenders pursuant to section 364(e) of the Bankruptcy Code and, accordingly, all of the obligations under the DIP Loan Documents shall be entitled to the full protections of the provisions of section 364(e) of the Bankruptcy Code in the event any Financing Order or any provision thereof is vacated, modified or reversed.

18. **Limits on Lender's Liability.** Nothing in this Order or in any of the DIP Loan Documents or any other documents relating to the financing transactions authorized hereby shall in any way be construed or interpreted to impose or allow the imposition upon Lender of any liability for any claims arising from the pre-petition or post-petition activities by the Debtor in the operation of its business or in connection with its restructuring efforts. This statement of the limits on Lender's liability is not intended to affect liability of Lender to Debtor, if any, for

claims that existed as of the Petition Date. The Lender shall not in any manner be responsible for (a) the safekeeping of the Collateral, (b) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (c) any diminution in the value thereof or (d) any act or default of any carrier, servicer, bailee, custodian or other person, and all risk of loss shall be borne by the Debtor.

19. **No Waiver of Rights.** Notwithstanding anything to the contrary herein, this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights of the Lender under the Bankruptcy Code or under non-bankruptcy law. The rights and obligations of Debtor and the rights, claims, security interests, liens, and priorities of the Lender arising under this Order are in addition to, and not in lieu or substitution of, the rights, obligations, claims, security interests, liens, and priorities under the DIP Loan Documents.

20. **Adequate Notice; Notice of Final Hearing.** The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001, and the local rules of the Court.

21. **Conflict.** To the extent that the terms and conditions of the DIP Loan Documents conflict with the terms and conditions of this Order, the terms and conditions of this Order shall control.

22. **Fees to Lender.** Notwithstanding anything to the contrary in DIP Loan Documents, any attorneys' fees and costs payable by the Debtor under the DIP Loan Documents shall be subject to prior court approval.

23. **Notice and Hearing.** All secured creditors, the Creditor's Committee , the United States Internal Revenue Service, the U.S. Trustee and any party requesting notice shall be mailed, facsimiled or electronically mailed copies of this Order by Debtor-in-Possession forthwith, which mailing or fax shall constitute adequate notice of the terms hereof. This Order

shall constitute a preliminary order for borrowing under Rule 4001(c) of the Federal Rules of Bankruptcy Procedure. Pursuant to Rules 4001(c) (2) and (c) (3) of the Federal Rules of Bankruptcy Procedure, this matter is set for final hearing at the United States Bankruptcy Court, 157 Church Street, 18th Floor, New Haven, Connecticut 06510 at 10:00 a.m. on January 13, 2010, as the same may be adjourned or continued by the Court, at which time any party in interest may appear and state its objections, if any, to any further borrowing requested in the Motion by Debtor-in-Possession. Objections shall be in writing and shall be filed with the Court and served upon Debtor-in-Possession, not later than prior to the hearing on January 13, 2010 (which date is at least 15 days after service of the Motion). If no objection is filed, the Court may enter a final order confirming this Order and/or an additional Order permitting further borrowing from and after the date of the final hearing.

CONSENTED AND AGREED:

**DEBTOR**  
**Lavatec, Inc.**

Samir Tadros, Inc.

/S/   Dean W. Baker  
By its counsel, Dean W. Baker

/S/Jed Horwitt  
By its counsel, Jed Horwitt

Dated:   DEC - 4 2009

Lorraine Murphy Weil  
U.S. Bankruptcy Judge