UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| In re:  LAVATEC, INC.  Debtor | Chapter 11 Case No. 09-32004 (LMW) |
|---|---|

**DEBTOR'S MOTION FOR AN ORDER
(A) AUTHORIZING AND APPROVING FORM OF "STALKING HORSE"
AGREEMENT, BIDDING PROCEDURES AND BREAK-UP FEE,
(B) SCHEDULING AN AUCTION AND A HEARING, AND
(C) GRANTING RELATED RELIEF, ALL IN CONNECTION
WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

Debtor, by and through its counsel, Dean W. Baker, moves pursuant to Bankruptcy Code §§ 1123 and 105 for an order (the "Sale Procedures Order") (a) authorizing and approving the form of a "stalking horse" agreement, bidding procedures, and a break-up fee, (b) scheduling an auction and a hearing and (c) granting related relief, all in connection with the sale of substantially all of the Debtors' assets, and respectfully states:

    1.      On July 24, 2009, Debtor filed the instant case under chapter 11 of the Bankruptcy Code. An Official Committee of Unsecured Creditors was constituted on August 19, 2009 ("Committee").

    2.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

    3.      The Debtor and Committee (the "Plan Sponsors") have jointly filed a plan

of liquidation that will be implemented by the sale of substantially all of the assets of the Debtor (the "Plan"). Section 1123(a)(5) of the Bankruptcy Code authorizes the sale of property of the estate pursuant to the Plan.

4. The Plan Sponsors have received a proposal from NEWCO to purchase the Debtor's assets ("Assets") as more particularly described in the Asset Purchase Agreement annexed as **Exhibit B-1** (the "Stalking Horse Agreement" or "APA") to the proposed order accompanying this motion. The Plan, filed simultaneous with this Motion, proposes to sell the Assets to NEWCO or an entity or entities making a higher and better offer than NEWCO for the Debtor's Assets. The APA and the proposed Plan provide for the transfer to NEWCO of all of the Debtor's assets except for (i) its interest in Washex, Inc. which shall be abandoned, and (ii) all avoidance actions which shall be preserved for the estate. All Debtor's intellectual property, consisting of the legal name of the Debtor, all names used by the Debtor, including the name Lavatec, Inc., any domain name, any trademarks, any trade names and any good will associated with those names is included in the sale to NEWCO. The sale shall be free and clear of liens and encumbrances, but subject to pending disputes respecting the use of the mark and tradename "Lavatec." The total purchase price is $3,300,000.00. It is an all cash deal. Any competing bidder would have to also pay all cash. Debtor's real property is an Establishment, as defined in Section 22a-134 *et seq*. (the "*Transfer Act*") of the Connecticut General Statutes, as amended. The Debtor does not have the financial resources to investigate, monitor and remediate any environmental issues that may exist and accordingly, any competing bidder must take on all obligations and responsibilities of a "certifying party" as described in the Transfer Act including its obligations

under the Form III or Form IV, as further described in the Transfer Act.

5. The Stalking Horse Agreement is the result of extended arms-length negotiations, is fair to the Debtor's estate, NEWCO or any other proposed buyer, and creditors and other parties in interest, and includes provisions that are common and customary for such transactions. The Plan Sponsors believe that the Stalking Horse Agreement is in the best interests of the creditors.

6. The Plan Sponsors request that the Court approve the form and provisions of the Stalking Horse Agreement as fair and reasonable. The Stalking Horse Agreement shall, however, be subject to higher and better bids and to further order of the Court authorizing the sale of the Debtor's Assets pursuant to the Plan at a confirmation hearing. The Plan Sponsors further request that the Court approve the form and provisions of a confidentiality agreement, attached as **Exhibit B-2** to the proposed order accompanying this motion.

7. The Plan Sponsors need an approved form of Stalking Horse Agreement in order to inform other bidders of the specifics of the NEWCO offer and what form of agreement has been approved by the Court, so that bidders may formulate their bids. The Plan Sponsors also need an approved form of confidentiality agreement in order to protect any proprietary information issued to prospective bidders.

8. In connection with the sale of the Debtor's Assets pursuant to the Plan and the Stalking Horse Agreement, and to ensure that the Plan Sponsors receives the highest and best offer for the Assets, the Plan Sponsors propose to hold an auction (the "Auction") pursuant to the bidding procedures (the "Bidding, Notice and Hearing Procedures") which are described in the proposed Order that the Plan Sponsors now seek to have this Court approve.

9. The Plan Sponsors reserve the right to (a) determine, in their discretion, which bid, if any, is the highest and best offer and (b) reject any bid that the Plan Sponsors deems to be inadequate, insufficient or otherwise unsatisfactory.

10. The Plan Sponsors believes that the Bidding, Notice and Hearing Procedures set forth in the proposed Order represent the best opportunity to maximize the value of the Assets. The Bidding, Notice and Hearing Procedures are designed to foster a competitive bidding process, which the Plan Sponsors believe will generate the highest and best offer for the Assets. The implementation of bidding procedures of the type described in the proposed Order is routinely approved by bankruptcy courts in connection with sales of property.

11. NEWCO has expended time, money and energy pursuing the purchase and has engaged in extended and lengthy good faith negotiations that have spanned more than a few months. The Stalking Horse Agreement is the culmination of these efforts. NEWCO requires a break-up fee in the amount of $100,000.00 (the "Break-up Fee"). Such Break-up Fee provides NEWCO with reasonable protection and compensation in consideration of (a) NEWCO agreeing to enter into the Stalking Horse Agreement notwithstanding the uncertainties presented by a sale of this magnitude, (b) NEWCO's expenditure of time, energy, resources, and expenses, and (c) the benefit to the estate of securing a "stalking horse" or minimum bid. Such Break-up Fee, as negotiated with NEWCO, was necessary to ensure that NEWCO would tender the Stalking Horse Agreement. As reasonable and necessary inducements to NEWCO to proceed with its offer to purchase the Debtor's Assets pursuant to the Stalking Horse Agreement, the Plan Sponsors requests that the Court approve such Break-up Fee.

12.     The Break-up Fee shall be payable only in the event that the Plan Sponsors consummate a sale of substantially all or a significant portion of the Debtor's Assets to an entity other than NEWCO, in which case the Break-up Fee shall be paid to NEWCO at the time of the closing of such sale from the proceeds of such sale. Funds above the NEWCO purchase and sale price realized upon closing to a higher and better offer shall be used first to satisfy the Break-up Fee, then split equally between the estate and the Bank until the Bank is paid in full, with any remaining balance payable to the estate to be disbursed in accordance with the Plan.

13.     Bidding incentives such as the Break-up Fee encourage a potential purchaser to invest the requisite time, money and effort to conduct due diligence and sale negotiations despite the inherent risks and uncertainties of the chapter 11 process. See In re S.N.A. Nut Co. 186 B.R. 98, 101 (Bankr. N.D. Ill. 1995) (stating that "[a]greements to provide breakup fees or reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers").

14.     In this case, the proposed Break-up Fee is equal to 3% of NEWCO's bid and is reasonable and appropriate in light of the size and nature of the proposed sale and the efforts that have been expended by NEWCO.

15.     The Break-up Fee is necessary to ensure that NEWCO will continue to pursue its proposed acquisition of the Assets. Accordingly the Plan Sponsors believe that the Break-up Fee should be approved.

16.     Pursuant to the Bid Procedures, the Plan Sponsors requests that the court enter an order scheduling the Auction and the hearing in order to determine whether NEWCO or some

other bidder will be the successful purchaser of the Debtor's Assets under the Plan. The requested hearing should take place at the time of the confirmation hearing and The Plan Sponsors requestthe Court to order that the hearing take place at the time and place of the confirmation hearing.

WHEREFORE, the Plan Sponsors respectfully request the entry of an order, substantially in the form attached hereto: (i) approving the form of Stalking Horse Agreement, (ii) approving the Bidding, Notice and Hearing Procedures, (iii) approving the proposed Break-up Fee, (iv) scheduling the Auction, (v) scheduling the hearing on the Auction at the time and place of the confirmation hearing, and (vi) granting the Plan Sponsors such other relief as is just and proper. Dated at New Haven, Connecticut this 13th day of April 2011.

Lavatec, Inc.

By: /s/    Dean W. Baker
Dean W. Baker, Esq.
Law Offices of Dean W. Baker
195 Church Street, Floor 8
New Haven, CT 06510
(203) 777-5666
dean@bohonnon.com