UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| In re:               LAVATEC, INC.                   Debtor | Chapter 11 Case No. 09-32004 (LMW) |
|---|---|

**PLAN OF LIQUIDATION**
**PROPOSED BY THE DEBTOR AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**ARTICLE I**
**INTRODUCTION AND SUMMARY OF THE PLAN**

On July 24, 2009, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Connecticut, New Haven Division. The Debtor hereby proposes the following Plan of Liquidation (the "Plan") pursuant to Bankruptcy Code section 1121. Reference should be made to the Disclosure Statement Submitted Pursuant to Section 1125 of the Bankruptcy Code with Respect to Plan of Liquidation Proposed by Debtor and Official Committee of Unsecured Creditors, dated April 8, 2011, of the same date, which has been filed and served together with the Plan to provide information adequate to enable Creditors and Interest Holders to make an informed judgment about whether to accept the Plan.

The Debtor and Official Committee of Unsecured Creditors ("Plan Sponsors") believe that the Plan will result in the greatest possible distribution to Creditors in this bankruptcy case. The Plan is a liquidation plan under which the Debtor's assets, including the Debtor's intellectual property (hereinafter "Intangibles"), consisting of the legal name of the Debtor, all names used by the Debtor, including the name Lavatec, Inc., any domain name, any trademarks, any trade names and any good will associated with those names (<u>but excluding</u> its interest in Washex, Inc. and in Causes of Action) will be sold to NEWCO. Causes of Action, if any, will be liquidated for the benefit of Creditors; and the Debtor's interest in Washex, Inc. will be abandoned as worthless. Under the Plan, all cash proceeds derived from the sale of Debtor's assets to NEWCO will be used to pay Creditors in accordance with the terms of this Plan. Any funds that the Debtor recovers through Causes of Action shall be distributed first to the holders of unpaid Allowed Administrative Claims, with the balance to Allowed Unsecured Claims in accordance with the terms of this Plan.

**ARTICLE II**
**DEFINITIONS**

In this Plan the following terms (which appear in this Plan as capitalized terms) have the following meaning:

1.      **"Allowed Administrative Claim"** shall mean any Allowed Claim under Bankruptcy Code section (i) 507(b) or (ii) 503(b) which is entitled to priority under Bankruptcy Code section 507(a)(2).

2.      **"Allowed Claim"** shall mean a Claim against the Debtor to the extent that:

The Claim has been scheduled by the Debtor as other than contingent, unliquidated or disputed and no proof of claim has been timely filed; or

A proof of claim has been timely filed; and, either

(i) the Claim is not a Disputed Claim (but only to the extent that such Claim is not a Disputed Claim); or

(ii) the Claim has been allowed (and only to the extent allowed) by a Final Order.

3. **"Allowed Interest"** shall mean any Equity Interest in the Debtor, as to which no objection has been made or which has been allowed by a Final Order.

4. **"Allowed Priority Claim"** shall mean that portion of an Allowed Claim entitled to priority under Bankruptcy Code section 507(a)(4), (5), (6) or (7).

5. **"Allowed Secured Claim"** shall mean that portion of an Allowed Claim which is determined to be secured under Bankruptcy Code section 506.

6. **"Allowed Tax Claim"** shall mean that portion of an Allowed Claim entitled to priority under Bankruptcy Code section 507(a)(8).

7. **"Allowed Unsecured Claim"** shall mean an Allowed Claim against the Debtor that arose or is deemed to have arisen before the Filing Date which is not an
Allowed Secured Claim, an Allowed Administrative Claim, an Allowed Tax Claim, or an Allowed Priority Claim, but includes, without limitation, Deficiency Claims and Claims arising from the rejection of executory contracts and unexpired leases.

8. **"Bankruptcy Code"** shall mean title 11 of the United States Code, as now in effect or hereafter amended.

9. **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Connecticut, New Haven Division.

10. **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, as amended, the Local Rules of the United States District Court for the District of Connecticut, as amended, and the Local Rules and standing orders of the Bankruptcy Court, as amended, all as applicable to this case.

11. **"Business Day"** shall mean any day other than a day on which banks are authorized to close under the laws of the State of Connecticut.

12. **"Cash"** shall mean cash, cash equivalents, and other readily marketable securities or instruments.

13. **"Claim"** shall mean any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, all as set forth in Bankruptcy Code section 101(5).

14. **"Causes of Action"** shall mean all causes of action and actions that may be brought (i) under sections 544, 547 through 551 and 553 of the Bankruptcy Code

2

(including a potential claim to avoid transfers made to Lavatec GmbH) and (ii) against Samir Tadros and/or Samir Tadros, Inc. to recover salary or payments made to Samir Tadros, Inc.

15.   **"Closing Date"** shall mean the date the sale to NEWCO is consummated (i.e. closed).

16.   **"Confirmation"** shall mean entry of the Confirmation Order.

17.   **"Confirmation Date"** shall mean the date upon which the Confirmation Order is entered by the Bankruptcy Court.

18.   **"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

19.   **"Creditor"** shall mean an entity that has a Claim against (a) the Debtor that arose at the time of or before the Filing Date or (b) the Debtor's estate of a kind specified in Bankruptcy Code section 502(g), (h) or (i).

20.   **"Creditors' Committee"** shall mean the Official Committee of Unsecured Creditors appointed in the Debtor's chapter 11 case pursuant to Bankruptcy Code section 1102, as the same may be changed or modified consistent with the provisions of the Bankruptcy Code.

21.   **"Debtor"** means Lavatec, Inc., as Debtor and Debtor-in-Possession under the Bankruptcy Code.

22.   **"Deficiency Claim"** shall mean that portion of an Allowed Claim which is determined to be unsecured under Bankruptcy Code section 506.

23.   **"Disclosure Statement"** shall mean the Disclosure Statement Submitted Pursuant to Section 1125 of the Bankruptcy Code with Respect to Plan of Reorganization Proposed by Debtor and the Official Committee of Unsecured Creditors, Dated April 8, 2011.

24.   **"Disputed Claim"** shall mean a Claim against the Debtor, to the extent that a proof of claim has been timely filed or deemed timely filed under applicable law, as to which an objection has been or may be timely filed by any party in interest and which objection, if timely filed, has not been withdrawn on or before any date fixed for filing such objections by the Plan or order of the Bankruptcy Court, and has not been overruled by a Final Order.  To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.  Prior to the time that an objection has been or may be timely filed, for the purposes of this Plan a Claim shall be considered a Disputed Claim to the extent that the amount of the Claim specified in the proof of claim exceeds the amount of the Claim scheduled by the Debtor as other than disputed, contingent or unliquidated.

25.   **"Effective Date"** shall mean a date that is no later than fifteen Business Days after the Confirmation Date and a day on which (i) an order staying the Confirmation Order is not in effect; (ii) the sale to NEWCO has been consummated and (iii) the conditions precedent in Article XI have been satisfied or waived.

26.   **"Equity Interest"** shall mean the interest in any equity security in or of any of the Debtor represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in the Debtor, whether or not transferable, including (a) any option, warrant, call, subscription, or other right, contractual or otherwise, to acquire any such interest and any redemption, conversion, exchange, voting participation, dividend rights, and liquidation preferences relating to any such equity security, and (b) all rights, interests, and Claims (including Claims for fraud, misrepresentation, rescission, reimbursement,

3

contribution, or damages) arising under or in connection with (i) all agreements, including stockholder agreements and management agreements, entered into by the Debtor in connection with the issuance of such security or (ii) the purchase or sale of such security.

27.  **"Filing Date"** shall mean July 24, 2009.

28.  **"Final Order"** shall mean an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which the time to appeal or to seek certiorari or review has expired and as to which no appeal or petition for certiorari or review is pending or as to which any right to appeal or to seek certiorari or review has been waived.

29.  **"NEWCO"** shall mean Laundry Acquisition Inc. or the highest and best bidder (High Bidder) as determined under the Sale Procedures Order; except that the break-up fee referred to in the Sale Procedures Order, shall always be payable to Laundry Acquisition Inc..

30.  **"Plan"** shall mean this Plan of Reorganization and any exhibits or duly authorized amendments hereto.

31.  **"Professional Persons"** shall mean those persons or firms that have been retained by the Debtor or the Creditors' Committee and approved by the Bankruptcy Court pursuant to Bankruptcy Code section 327.

32.  **"Pro Rata"** shall mean the ratio of an Allowed Claim or Allowed Interest in a particular class of Claims or interests to the amount of all Allowed Claims or Allowed Interests in the class.

33.  **"Representatives"** shall means, with respect to any particular person or entity, such person or entity's officers, directors, employees, members, partners, principals, managers, agents, advisors (including any attorneys, financial advisors, investment bankers, and other professionals retained by such persons or entities), affiliates, and representatives.

34.  **"Sale Procedures Order"** shall mean the order of the Bankruptcy Court approving, inter alia, the break-up fee to NEWCO and sales procedures for sale of Debtor's assets to the highest and best bidder.

35.  **"Schedules"** shall mean the schedules of assets and liabilities, as amended and as may be further amended, filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007.

36.  **"Wachovia Subordinated Claim"** shall mean all Allowed Unsecured Claims of Wachovia Bank, N.A., including, without limitation, any Deficiency Claim of Wachovia Bank, N.A.

Terms not defined herein which are defined in the Disclosure Statement shall have the meaning assigned to such term in the Disclosure Statement. A term used in the Plan that is not defined in the Plan or Disclosure Statement but is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

**ARTICLE III**
**DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS**

3.1   All Claims against the Debtor, of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute, or contingent, including all Claims arising from the rejection of executory contracts, and Allowed Interests in the Debtor, shall be bound by the provisions of this Plan and are hereby classified as follows:

4

3.2    **Allowed Administrative Claims.** Allowed Administrative Claims are not classified under the Plan and, therefore, have no right to accept or reject the Plan. The Debtor estimates that as of the Confirmation Date the total amount of Allowed Administrative Claims will not exceed approximately $260,000.00. This total includes estimated fees and expenses due to Dean W. Baker, Esq. counsel to the Debtor, and Coan, Lewendon, Gulliver & Miltenberger, LLC counsel to the Creditor's Committee and McCormick, Paulding & Huber LLP., special counsel to the Debtor, as well as amounts due Samir Tadros, Inc. for post-petition credit provided to the Debtor. Treatment of such Claims under the Plan is in accordance with the requirements of the Bankruptcy Code.

3.3    **Allowed Tax Claims.**  Allowed Tax Claims are not classified under the Plan and, therefore, have no right to accept or reject the Plan.  Treatment of Allowed Tax Claims under the Plan is in accordance with the requirements of the Bankruptcy Code.

3.4    **Class 1 - Allowed Priority Claims.**  Class 1 consists of any unpaid Allowed Priority Claims.  This class is unimpaired and is not entitled to vote on the Plan.

3.5    **Class 2 - Allowed Secured Claim of Wachovia Bank, N.A. (mortgage note secured by the Debtor's real property).**  Class 2 consists of an Allowed Secured Claim of Wachovia Bank, N.A.  This class is impaired and is entitled to vote on the Plan.

3.6    **Class 3 - Allowed Secured Claim of Wachovia Bank, N.A. (line of credit secured by the Debtor's real and personal property).**  Class 3 consists of an Allowed Secured Claim of Wachovia Bank, N.A.  This class is impaired and is entitled to vote on the Plan.

3.7    **Class 4 - Allowed Secured Claim of City of Naugatuck.**  Class 4 consists of all Allowed Secured Claims of the City of Naugatuck.  This class is unimpaired and is not entitled to vote on the Plan.

3.8    **Class 5 - Allowed Secured Claim of Wells Fargo Financial Leasing, Inc.**  Class 5 consists of all Allowed Secured Claims of Wells Fargo Financial Leasing, Inc.  This class is unimpaired and is not entitled to vote on the Plan.

3.9    **Class 6 - Allowed Secured Claim of the State of Connecticut.**  Class 6 consists of all Allowed Secured Claims of the State of Connecticut.  This class is unimpaired and is not entitled to vote on the Plan.

3.10    **Class 7 - Allowed Unsecured Claims.**  Class 7 consists of all Allowed Unsecured Claims.  This class is impaired and is entitled to vote on the Plan.

3.11    **Class 8 - Allowed Interests.**   Class 8 shall consist of all Allowed Interests. All ownership/equity interests in the Debtor (i.e. all Allowed Interests) will be extinguished and will not receive any property or payment on account of their Interests. This class is impaired and is deemed to have rejected the Plan.

## ARTICLE IV
## TREATMENT OF ALLOWED ADMINISTRATIVE
## CLAIMS AND ALLOWED TAX CLAIMS

4.1    **Allowed Administrative Claims.** Each holder of an Allowed Administrative Claim shall be paid in full in cash on the later of (i) the Effective Date of the Plan and, where allowance of such Administrative Claim is required by the Bankruptcy Court, (ii) the date of the entry of a Final Order allowing and determining such Administrative Claim; provided, however, that (a) such holder may be treated on such less favorable terms as may be agreed to by such holder and (b) Administrative Claims representing liabilities incurred by the Debtor in the ordinary course of

business during the case shall be paid in accordance with the terms and provisions of the particular transactions and agreements relating thereto, and to the extent such ordinary course Administrative Claims are outstanding at the time of closing of the sale to NEWCO, they will be assumed and paid by NEWCO.

4.2     **Allowed Tax Claims.**  Each holder of an Allowed Tax Claim (i) shall be paid in full in Cash on the later of (a) the Effective Date of the Plan or (b) the entry of a Final Order allowing and determining such Tax Claim, or (ii) shall be paid on such other terms as have been or may be agreed to between such holder and the Debtor.

## ARTICLE V
## TREATMENT OF CLASSES NOT IMPAIRED UNDER THE PLAN

5.1     **Class 1 - Allowed Priority Claims.**   On the Effective Date, the Debtor shall pay Allowed Priority Claims in full in Cash.

5.2     **Class 4 – Allowed Secured Claim of Naugatuck**. The Debtor will make distributions to the holders of Class 4 Allowed Secured Claims in full satisfaction of their allowed claims as follows: On the Closing Date, the Debtor shall pay Class 4 in full in Cash. This Class shall retain its liens securing its Claims until paid in accordance with the terms of the Plan. Upon payment and or compliance with treatment of this Class, the holders of the Claims in this Class will release their liens.

5.3     **Class 5 – Allowed Secured Claim of Wells Fargo**. The Debtor will make distributions to the holders of Class 5 Allowed Secured Claims in full satisfaction of their allowed claims as follows: On the Closing Date, the Debtor shall pay Class 5 in full in Cash. This Class shall retain its liens securing its Claims until paid in accordance with the terms of the Plan. Upon payment and or compliance with treatment of this Class, the holders of the Claims in this Class will release their liens.

5.4     **Class 6 – Allowed Secured Claim of the State of Connecticut**. The Debtor will make distributions to the holders of Class 6 Allowed Secured Claims in full satisfaction of their allowed claims as follows: On the Closing Date, the Debtor shall pay Class 6 in full in Cash. This Class shall retain its liens securing its Claims until paid in accordance with the terms of the Plan. Upon payment and or compliance with treatment of this Class, the holders of the Claims in this Class will release their liens.

## ARTICLE VI
## TREATMENT OF CLASSES IMPAIRED UNDER THE PLAN

6.1     **Class 2 – Allowed Secured Claim of Wachovia**. The Debtor will make distributions to the holders of Class 2 Allowed Secured Claims in full satisfaction of their allowed claims as follows: On the Closing Date, Class 2 will receive $2,150,000.00, of proceeds from the sale to NEWCO as described in Section 8.2 below. Class 2 shall also receive any portion of the Overbid Amount that Class 2 is entitled to in accordance with Section 8.3 of this Plan. This Class shall retain its liens securing its Claims until paid in accordance with the terms of the Plan. Upon payment and or compliance with treatment of this Class, the holders of the Claims in this Class will release their liens. Any claims or rights or remedies that Wachovia has against third parties by virtue of existing guarantees of Debtor's payment obligations to Wachovia are unaffected by the Plan.

6.2     **Class 3 – Allowed Secured Claim of Wachovia**. The Debtor will make distributions to the holders of Class 3 Allowed Secured Claims in full satisfaction of their allowed claims as follows: On the Closing Date, Class 3 will receive $150,000.00, of proceeds from the sale to NEWCO as described in Section 8.2 below. Class 3 shall also receive any portion of the Overbid

Amount that Class 3 is entitled to in accordance with Section 8.3 of this Plan. This Class shall retain its liens securing its Claims until paid in accordance with the terms of the Plan. Upon payment and or compliance with treatment of this Class, the holders of the Claims in this Class will release their liens. Any claims or rights or remedies that Wachovia has against third parties by virtue of existing guarantees of Debtor's payment obligations to Wachovia are unaffected by the Plan.

6.3     **Class 7 - Allowed Unsecured Claims.**  The Debtor will make distributions to the holders of Class 7 Allowed Unsecured Claims in full satisfaction of their Allowed Claims as follows:

(a) Within ninety (90) days after the Effective Date of the Plan each holder of an Allowed Unsecured Claim (other than Wachovia Bank, N.A.) shall receive its Pro Rata share of $100,000.00, plus any portion of the Overbid Amount that Class 7 is entitled to in accordance with Section 8.3 of this Plan (collectively, the "Initial Distribution") until a distribution of 15% is achieved.

(b) After the Initial Distribution, and within ninety (90) days after any meaningful recovery is made by or for the benefit of the Debtor from Causes of Action or other recoveries, each holder of an Allowed Unsecured Claim (other than Wachovia Bank, N.A.) shall receive its Pro Rata share of any future distribution until a maximum dividend of 15% (inclusive of the Initial Distribution) of the gross sum of all Allowed Unsecured Claims (other than Wachovia Bank, N.A.) is achieved. Any further potential distribution shall be paid to Wachovia Bank, N.A. up to a maximum amount of 15% of the Wachovia Subordinated Claim and thereafter *pari passu* to the holders of all Allowed Unsecured Claims including the Wachovia Subordinated Claim.

To the extent that an Unsecured Claim is the subject of an objection and/or Avoidance Action at the time of a distribution (and, therefore, not eligible to receive payment), or is otherwise not entitled to distribution, sufficient sums shall be held back from any such distribution to preserve the sums otherwise payable to the holder of such Claim until resolution of the objection and/or Avoidance Action. In no event shall interest or other accretions be payable upon such Disputed Claims or Claims subject to Causes of Action, that later become Allowed Claims.

6.4     **Class 8 - Allowed Interests.**  Class 8 shall consist of all Allowed Interests. All Equity Interests in the Debtor (i.e. all Allowed Interests) will be extinguished and will not receive any property or payment on account of their Interests.

6.5   **Nonconsensual Confirmation.**  If any impaired class of Claims entitled to vote, other than Class 2 and Class 3, shall not accept the Plan by the requisite majority provided in section 1126(c) of the Bankruptcy Code, the Plan Sponsors reserve the right to amend the Plan or undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code or both. The Plan Sponsors shall not seek confirmation under section 1129(b) of the Bankruptcy Code with respect to Class 2 and/or Class 3. The Plan Sponsors will also seek to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code with respect to Class 8 Allowed Interests.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     All executory contracts and leases that have not been assumed or rejected as of the Confirmation Date shall be deemed to be rejected by the Debtor on the Confirmation Date. **THE CONFIRMATION ORDER SHALL CONSTITUTE NOTICE TO ALL HOLDERS OF EXECUTORY CONTRACTS REJECTED BY THE DEBTOR OR THIS PLAN WHO ASSERT CLAIMS ARISING FROM SUCH REJECTION THAT SUCH CLAIMS SHALL BE FILED NOT LATER THAN 30 DAYS AFTER CONFIRMATION OR BE FOREVER BARRED.**

## ARTICLE VIII
## MEANS FOR EXECUTION OF THE PLAN

8.1     **The Effective Date.**  On the Effective Date all required payments and transfers of property shall be made to holders of Allowed Administrative Claims, Allowed Tax Claims and Allowed Priority Claims. On the Closing Date all required payments and transfers of property shall be made to holders of Class 2, 3, 4, 5 and 6 Allowed Secured Claims. The payments will be made from cash proceeds generated from the sale of the Debtor's assets to NEWCO. The cash proceeds of the sale representing the distribution amount for Class 7 will be transferred on the Effective Date to the non-interest-bearing attorney trust account of Coan, Lewendon, Gulliver & Miltenberger, LLC. Within ninety days after the Effective Date, said counsel to the Official Committee of Unsecured Creditors shall make Pro Rata distributions of the Initial Distribution to the holders of Allowed Unsecured Claims.

8.2     **Sale of the Business to NEWCO.**  All of Debtor's right, title and interest in and to all real property and personal property including the Intangibles (<u>but excluding</u> its interest in Washex, Inc. and Causes of Action) will be sold free and clear of liens to NEWCO for the gross sum of $3,300,000.00 or such higher amount that may be generated from the Auction under the Sale Procedures Order, attached to the Disclosure Statement as EXHIBIT B. A copy of the Asset Purchase Agreement ("APA") is attached to the Disclosure Statement as EXHIBIT B-1 and is made a part hereof. As part of the sale to NEWCO, NEWCO will assume Debtor's current liabilities incurred in the ordinary course of business, but excluding any tax liabilities, product liabilities, liabilities for breach of contract, liabilities under environmental and similar laws, liabilities for breaches of product warranties or similar liabilities reflected thereon. NEWCO will not assume, the sale will be free and clear of, and Debtor will retain, pay, discharge and perform, in full, all other debts, obligations and liabilities of Debtor, known or unknown, fixed, contingent or otherwise, arising out of, or resulting from, Debtor's ownership or operation of its business or the acquired assets prior to the closing, or otherwise in accordance with the Plan. Any litigation involving the mark "LAVATEC" may be taken over by NEWCO at its option; but NEWCO shall not assume any liabilities of the Debtor arising out of or relating to such litigation. NEWCO may assume, in its sole and absolute discretion, any payments to administrative creditors that have not otherwise been satisfied under the Plan. If Laundry Acquisition Inc. remains the successful purchaser after the auction under the Sale Procedures Order, the Debtor's estate shall receive from NEWCO $3,300,000.00 or such higher amount that results from the Auction under the Sale Procedures Order. Said funds will be disbursed to Classes 1, 2, 3, 4, 5 and 6, reserved for and paid when allowed to Administrative Claims, and $100,000 disbursed to Class 7.

8.3     **Higher and Better Offers.** The Sale to NEWCO is subject to higher and better offers pursuant to procedures, including the requirement of a deposit for any bidder other than Laundry Acquisition Inc., as reflected in the Sale Procedures Order attached to the Disclosure Statement as Exhibit B. In the case where Laundry Acquisition Inc. remains the highest and best bidder, the assets of the Debtor will be sold to Laundry Acquisition Inc. in the manner provided for under this Plan and for the revised purchase price, if any, and according to the terms and conditions of the executed APA. In the case where Laundry Acquisition Inc. is not the highest and best bidder, the assets of the Debtor will be sold to the successful bidder in the manner provided for under this Plan and for the new purchase price and according to the terms and conditions of an executed APA with the successful bidder. In the case where the sale price to NEWCO is greater than $3,500,000.00 and Laundry Acquisition Inc. is not the successful bidder, the break-up fee approved by the Sale Procedures Order shall be paid to Laundry Acquisition Inc. at the time the sale to the successful bidder is consummated. The Debtor's estate shall in all cases, receive from NEWCO the new purchase price. The difference between the new purchase price and

8

$3,300,000.00 is referred to as the "Overbid Amount". The Debtor's estate shall receive one-half of the Overbid Amount remaining after payment of the break-up fee of $100,000.00 and the balance of the Overbid Amount will be paid to Wachovia Bank's Class 2 and Class 3 Claims until those Classes are paid in full. The Plan Sponsors will reserve from the estate's portion of the Overbid Amount such funds as are necessary in the judgment of the Plan Sponsors to satisfy both Priority Claims and Administrative (both existing and projected) Claims and the balance of the estate's portion of the Overbid Amount will be disbursed to Class 7. The balance of the purchase price will be distributed as provided in Section 8.2 of this Plan (i.e. disbursed to non-classified creditors, Classes 1, 2, 3, 4, 5 and 6, reserved for and paid when allowed to Administrative Claims, and $100,000 disbursed to Class 7). If any deposit is forfeited under the Sale Procedures Order it shall be treated and disbursed in the same manner as the Overbid Amount.

8.4    **Closing**.  The Closing on the sale to NEWCO shall take place as soon as practicable after entry of the Confirmation Order, and in no case later than 15 Business Days after the Confirmation Order has become a Final Order, provided, however, that such date may be extended by up to ten (10) days by the Plan Sponsors and NEWCO upon mutual agreement.

8.5    **Exemption from Transfer Taxes**. Pursuant to section 1146(a) of the Bankruptcy Code, the sale of any assets contemplated at or contemporaneously with the closing issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the Debtor's Common Stock, any merger agreements, or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax. All transactions contemplated herein shall be exempt from any such tax.

8.6    **Designation by the Debtor**. The Debtor designates Herman Bernstein and Peter Thompson (current officers of the Debtor) to assist counsel to the Debtor and counsel to the Official Committee of Unsecured Creditors with all post-confirmation obligations under the Plan and Herman Bernstein and/or Peter Thompson are further designated as fiduciaries of the Debtor's estate to take all actions and execute all documents required to effect the transactions described in this Plan, including the sale to NEWCO.

8.7    **Causes of Action**. The Debtor and/or Official Committee of Unsecured Creditors, acting by counsel, shall be vested after Confirmation with the right and power to commence or continue in the name of the Debtor and on behalf of the estate all Causes of Action or proceedings necessary or desirable to recover or liquidate property or debts, to prosecute litigation and to assert any other claims. Further orders of the Bankruptcy Court will not be necessary after Confirmation in order to confer such rights and powers on the Debtor and/or Official Committee of Unsecured Creditors. All net recoveries, if any, under this Section shall be distributed, pro rata, to Allowed Unsecured Claims and to the Wachovia Subordinated Claim in accordance with Section 6.5, after appropriate reserve for all present and projected Administrative Claims.

8.8    **Compromise and Abandonment**.  The Plan Sponsors shall have the joint authority, at their discretion, to: compromise any causes of action vested in the Debtor and any matter relating to the Debtor or its property or assets in the manner and upon the notice prescribed by Rule 9019 of the Federal Rules of Bankruptcy Procedure which notice maybe limited and reduced with Court Approval as allowed by the Rules; and abandon any asset or property of the Debtor that the Plan Sponsors conclude in their sole discretion is burdensome to the Debtor, is of inconsequential value to the Debtor or cannot be effectively prosecuted or pursued because of inadequacy or insufficiency of funds available for such purpose. Notice shall be given as prescribed by Federal Rule of Bankruptcy Procedure 6007.

8.9     **Professionals.**  The professionals retained herein pursuant to orders of the Bankruptcy Court during the proceeding shall continue to serve pursuant to such appointments, with fees subject to appropriate application and approval, subsequent to Confirmation.

## ARTICLE IX
## TERMS GOVERNING DISTRIBUTIONS

9.1     **Distributions by the Plan Sponsors.**  The Plan Sponsors shall reserve and distribute Cash and other assets of the Debtor and this estate in accordance with the provisions of this Plan. Counsel to the Official Committee of Unsecured Creditors shall be responsible for determining the Pro Rata distribution to which each Class 7 Creditor is entitled and for determining the dates upon which such payments are to be made. The Plan Sponsors shall make distributions as often as in their discretion and judgment there is an amount of funds sufficient to make a meaningful distribution to holders of Allowed Claims.

9.2     **Last Known Address**. Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim or Allowed Administrative Claim will be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor or its agents, as applicable, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or interest by such holder that contains an address for such holder different from the address reflected for such holder on the Schedules.

9.3     **Returned Distributions**. Under the Plan, if (i) any distribution made to the holder of any Claim is returned as not deliverable, and such holder fails to notify counsel to the Official Committee of Unsecured Creditors of a proper address before 60 days after the distribution date, or any distribution check remains uncashed for more than 60 days after the date of the check, then the holder of such Allowed Claim shall be deemed to have waived (a) its Allowed Claim, and (b) all rights to any further distribution under this Plan. During such 60 day period, counsel for the Official Committee of Unsecured Creditors shall make a good faith effort to discover a proper address for the holder of such Allowed Claim, and to contact such entity and failing that such distribution will revert to the Debtor at the expiration of one year from the Effective Date.

9.4     **Setoff or Recoupment**. The Debtor may, but shall not be required to, set off against, or recoup from, any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever that the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim it may have against such claimant.

9.5     *De Minimis* **Distribution.** The distributors of funds pursuant hereto shall not be obligated to distribute any payment less than or equal to $5.00.

## ARTICLE X
## TERMS GOVERNING DISPUTED CLAIMS

10.1    Objection to Claims/Disputed Claims. Objections to Claims, if any, with the exception of any Claim to which an objection may be filed under Bankruptcy Code section 502(d) (as to which Claims an objection need not be filed within the time period set forth hereinafter), shall be filed with the Bankruptcy Court and served upon each holder of a Disputed Claim no later than the sixtieth day following the Confirmation Date.  Except as otherwise set forth herein, objections which are not filed within such sixty (60) day period following the Confirmation Date are barred, precluded and may not be raised.  With respect to any Claim for which no objection is filed within such time, such Claim shall be deemed an Allowed Claim for the amount specified in a timely filed proof of claim with respect to such Claim, or, if no timely filed proof of claim exists, in the

amount specified in the Schedules, unless the Claim was specified in the Schedules as being disputed, contingent or unliquidated.  If no timely filed proof of claim exists, and the Claim was specified in the Schedules as being disputed, contingent or unliquidated, the Claim shall be barred and no distribution made thereon pursuant to Bankruptcy Code section 1111(a) and Bankruptcy Rule 3003(c)(2).  With respect to any Claim to which a timely objection (which shall expressly be deemed to include any application, motion or complaint seeking subordination of a Claim) is filed (i.e., a "Disputed Claim"), no distribution shall be made to the holder of any such Disputed Claim until the entry of a Final Order or judgment determining the allowed amount of such Disputed Claim.  Pending the time of such Final Order or judgment, to the extent that any sum otherwise becomes payable to the holders of Claims of the class to which the Disputed Claim belongs, there shall be reserved by the Debtor an amount equivalent to that amount which would be payable to the holder of the Disputed Claim in the event that such Disputed Claim were allowed in the full amount asserted. Upon final determination of the allowed amount of the Disputed Claim, payment will be made to the holder of the Disputed Claim to the extent necessary to pay the same percentage of the allowed amount of such Claim as has been paid to Allowed Claims in said Class, without interest or any other accretions.

## ARTICLE XI
## CONDITIONS PRECEDENT

11.1   **Conditions to Consummation**. The Plan shall not be consummated unless and until the following conditions have been satisfied or waived in accordance with Article XI of this Plan:

(a)   The Confirmation Order, in form and substance satisfactory to the Plan Sponsors and NEWCO has been entered on the docket maintained by the Clerk of the Bankruptcy Court; and

(b)   All conditions in the Asset Purchase Agreement with Newco must be satisfied or waived;

11.2   **Waiver**.  The conditions precedent in Section 11.1(b) hereof may be waived, in whole or in part, by NEWCO and to the extent applicable by the Plan Sponsors. Any such waivers may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action.

## ARTICLE XII
## EFFECT OF CONFIRMATION

12.1   **Binding Effect**. Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

12.2   **Exculpation**. As of the Confirmation Date, the Plan Sponsors and their Representatives shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. The Debtor, the Official Committee of Unsecured Creditors, and each of their respective Representatives shall have no liability to any holder of any Claim or Equity Interest or any other person for any act or omission taken or not taken in good faith in connection with, or arising out of, the Reorganization Case, the Disclosure Statement, the Plan, the solicitation of votes for and the pursuit of confirmation of the Plan, the offer and issuance of any securities under the Plan, any sale of assets contemplated in the plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence as determined by a Final Order and, in all respects, shall be

entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

12.3   **Releases**.   For good and valuable consideration, including, but not limited to, the distributions to be made under the Plan, and the services of the Official Committee of Unsecured Creditors, and the efforts of each counsel to the Plan Sponsors to facilitate this Plan, effective as of the Effective Date, the current officers of the Debtor holding office as of the Effective Date, each member of the Official Committee of Unsecured Creditors and counsel to the Plan Sponsors (hereinafter each a "Releasee") is hereby released by the Debtor and its estate from any and all claims, debts, obligations, rights, suits, damages, actions, causes of actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, directly or indirectly arising from or related to the Debtor, existing as of the Effective Date or thereafter arising, in law, at equity, or otherwise, that the Debtor held, holds or may hold or that any creditors of the Debtor, any persons who have held, hold or may hold any Claim or Equity Interest, or any other person would have been legally entitled to assert on behalf of the Debtor or its estate, based in whole or in part upon any act or omission, transaction, agreement, event, or any other occurrence taking place on or before the Effective Date, including without limitation, claims, actions, and causes of action arising from actions taken or not taken in good faith in connection with the Plan of the Debtor and other transactions contemplated by this Plan; provided, however, that nothing herein shall be deemed to release any rights, claims, or interests that any such party may be receiving or retaining pursuant to the Plan on or after the Effective Date. All persons shall be precluded and permanently enjoined from asserting against the Releasees, and their respective assets and properties, any and all claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities whatsoever which are released under this Section 12.3. Any person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator. Nothing in this Plan shall be deemed to or construed to release former officers, directors, shareholders and employees of the Debtor (i.e. persons or entities that are not officers, directors, shareholders and/or employees as of the date of the filing of this Plan) and nothing in the Plan shall impair or otherwise alter or affect Wachovia Bank, N.A.'s rights, claims or remedies with respect to Samir Tadros.

12.4 **Causes of Action**.   Effective as of the Effective Date, unless any Causes of Action are settled prior to the Confirmation Date with bankruptcy court approval, all Causes of Action shall remain valid and enforceable by any one of the Plan Sponsors for the benefit of Class 7 claimants and to pay professional expenses.

**ARTICLE XIII**
**RETENTION OF JURISDICTION**

13.1 **Jurisdiction**.   Notwithstanding the Confirmation of the Plan or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(1)          to take any action to resolve any disputes arising out of or relating to any Claim or any equity security interest; to determine other issues presented by or arising under the Plan; and to take any action to resolve any dispute of any creditor with respect to its Claim;

(2)          to construe and to take any action to enforce the Plan, issue such orders as may be necessary for the implementation, execution and consummation of the Plan, and determine all other matters which may be pending on the Confirmation Date;

(3)          to determine any and all applications for allowance of compensation;

(4)          to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance, assumption or assignment of executory contracts and the allowance

12

of any Claim resulting therefrom;

(5)  to determine all Causes of Action, applications, adversary proceedings, contested matters and other litigated matters pending on or filed after the Confirmation Date;

(6)  to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(7)  to modify the Plan, or to remedy any apparent non-material defect or omission in the Plan, or to reconcile any non-material inconsistency in the Plan so as to carry out its intent and purposes;

(8)  to adjudicate all Claims as to a security or ownership interest in any property of the Debtor or in any proceeds thereof; and

(9)  to determine (i) all matters and disputes arising out of or in any way relating to the Auction, as defined in the Sale Procedures Order, and (ii) all matters and disputes arising out of or in any way relating to the transactions contemplated by this Plan.

## ARTICLE XIV
## MISCELLANEOUS

**14.1  Governing Law.**  Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by, and construed in accordance with, the laws of the State of Connecticut.

**14.2  Headings.**  The headings of the Articles, paragraphs, and sections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

**14.3  Defects, Omissions and Amendments.**  The Debtor may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and interests, insofar as it does not materially and adversely affect the interest of holders of Claims and holders of interests, correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary to expedite the execution of the Plan.  The Plan may be altered or amended before or after Confirmation, as provided in Bankruptcy Code Section 1127, if in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of holders of Claims and holders of interests.  The Plan may be altered or amended before or after Confirmation in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects holders of Claims and holders of interests, after a further hearing and acceptance of the Plan as so altered or modified as provided in Bankruptcy Code section 1127.

**14.4  Severability.**  Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

**14.5  Computations.**  Any calculation of days shall be in accordance with Bankruptcy Rule 9006.

**14.6  Miscellaneous Rules of Construction.**  (1) The words "herein," "hereof," "hereunder," and other words of similar import refer to this Plan as a whole, not to any particular section, subsection or clause, unless the context requires otherwise; (2) whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, or neuter; (3) accounting terms not otherwise defined in this Plan shall have the meanings assigned to them under generally accepted accounting principles currently in effect;

13

and (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, unless superseded herein or in the Confirmation Order.

14.7   **Plan Sponsors**.  Any reference to one or both of the Plan Sponsors means for purposes of the Plan any one of the Plan Sponsors and in the case that a Plan Sponsor is disqualified, resigns, withdraws or can no longer be considered a Plan Sponsor, the remaining Plan Sponsor shall be deemed to have sponsored this Plan and have assumed the obligations attributable to a the Plan Sponsors.

14.8   **Confirmation Order and Plan Control.**  To the extent the Confirmation Order and/or the Plan is inconsistent with the Disclosure Statement, the Plan controls the Disclosure Statement, and the Confirmation Order (and any other orders of the Bankruptcy Court) control the Plan.

14.9   **Successors and Assigns.**  The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such Person or Entity.

14.10   **Effectuating Documents and Further Transactions.**  Herman Bernstein and or Peter Thompson are authorized and directed as fiduciaries of the Debtor's estate to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan.

Dated at New Haven, Connecticut this 8th day of April 2011.

**Lavatec, Inc.**

By: /s/  Herman Bernstein
Name: Herman Bernstein
Its: President

By: /s/   Dean W. Baker
Dean W. Baker, Esq.
Law Offices of Dean W. Baker
195 Church Street, Floor 8
New Haven, CT 06510
(203) 777-5666
dean@bohonnon.com

**The Official Committee of Unsecured Creditors**

By: /s/  Honor S. Heath
Name: Honor S. Heath, Esq.
Its: Chairman

By: /s/   Carl T. Gulliver
Carl T. Gulliver, Esq.
Coan, Lewendon, Gulliver & Miltenberger, LLC
495  Orange Street
New Haven, CT  06511
(203) 624-4756
cgulliver@coanlewendon.com